Filed 3/20/24  In re Z.R. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Z.R. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.L.,<br><br>Defendant and Appellant. | F086626<br><br>(Super. Ct. Nos. 21CEJ300171-1, 21CEJ300171-2)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Kimberly J. Nystrom-Geist, Judge.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Peña, Acting P. J., Smith, J. and DeSantos, J.

Appellant (mother) is the mother of Z.R. and J.W. (collectively, the children) who are the subject of a dependency case. Mother appeals the juvenile court's order denying her request for return of the children with family maintenance services, as well as increased visitation. Mother argues the court abused its discretion by denying her request because she showed changed circumstances and return of the children to her care was in the children's best interests.

We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Dependency Case and Detention

The children came to the attention of the Fresno County Department of Social Services ("the department") in May 2021 when Z.R. was four years old and J.W. was three years old.[1] Fresno Police Officer Zachary Roberts contacted the department because the children's maternal aunt[2] expressed concern about the children's care with mother. Maternal aunt told the assigned social worker mother was often overwhelmed or angry with the children and when mother was too overwhelmed, she would yell at and hit the children. Maternal aunt was afraid mother's aggression toward the children was increasing as mother was hitting them more frequently, and she worried mother might end up killing the children. Z.R. told the responding social worker that mother punched him in the stomach with a closed fist and then kicked his legs when he fell to the ground, which was consistent with what Z.R. had disclosed to Roberts. Z.R. further disclosed that mother yells and hits Z.R. and J.W. when she is angry. Another relative told Roberts she had previously seen mother grab Z.R. by the feet, hold him upright as if mother was changing his diaper and punch Z.R. in the back of the legs. Z.R. told the social worker

---

[1]     Z.R. and J.W. have different fathers. Neither father is involved in this appeal.

[2]     Mother and her sister share the same initials. For purposes of clarity, we use the titles "mother" and "maternal aunt," respectively.

2.

that mother smokes marijuana inside and outside the house every day. Mother tested positive for marijuana. She admitted using marijuana but denied alcohol or other drug abuse. Mother reported suffering from seizures and blackouts and taking medication for this condition. The children were placed with maternal aunt with mother's consent.

On May 12, 2021, the department filed a first amended dependency petition pursuant to Welfare and Institutions Code[3] section 300, subdivisions (a) and (b)(1). The petition alleged serious physical harm to Z.R. and risk of serious physical harm to J.W., and failure to protect the children due to mother's substance abuse and uncontrolled medical condition. The petition specified that mother's drug use and medical issues contributed to her inability to provide a safe and stable home in that she exhibited anger issues and used inappropriate corporal punishment on the children.

At the detention hearing on May 12, 2021, the juvenile court found a prima facie showing had been made that the children were described under section 300 and continuance of the children in mother's care was contrary to their welfare. The children were detained and placed with maternal aunt. The court ordered supervised visits for mother not less than twice per week.

At a combined jurisdiction and disposition hearing on October 12, 2021, the juvenile court found true the allegations in the department's dependency petition. The court found clear and convincing evidence that mother's continued care of the children posed a substantial danger to the children's physical health and emotional well-being. The children were removed from mother and placed with maternal aunt. Reunification services were ordered for mother.

**B. The Department's Section 388 Petition and Section 366.26 Report**

On March 28, 2022, the department filed a section 388 petition requesting mother's reunification services be terminated. The department alleged mother had not

---

[3] All further statutory references are to the Welfare and Institutions Code.

participated in the domestic violence assessment, refused to undergo drug testing, and was suspended from the visitation center for reported violence toward the staff.

On July 7, 2022, the department withdrew its section 388 petition and requested a trial date for a combined six-month, 12-month and 18-month review of dependency status. In its combined six-month and 12-month status review report issued on September 9, 2022, the department again recommended reunification services for mother be terminated and a permanent plan be established for the children. The children continued to be placed with maternal aunt, who was willing to adopt them if they could not be returned to mother. Mother was initially dropped from her nurturing parenting program, but then completed the 15-week course with perfect attendance on April 6, 2022. Mother did not initially make herself available for the mental health assessment, but subsequently completed the assessment and did not meet medical necessity for individual therapy and case management. Mother had multiple positive drug tests for marijuana and multiple "no-shows" for drug testing. Mother twice tested positive for alcohol. On August 10, 2022, mother told the department she had not used marijuana in two months, but her test results showed new or continued use. Mother completed her domestic violence assessment and was recommended a 52-week child abuse intervention program. Mother enrolled in the recommended program but asserted the recommendation was " 'unnecessary because I did not abuse my children.' " As of August 17, 2022, mother had completed 12 sessions of the program with no absences.

Mother continued to have supervised visitation with the children, during which she was attentive and engaged with them. Mother practiced ABCs and spelling, ate snacks, and hugged and kissed the children during these visits. Mother struggled with the children not listening or fighting and provided verbal redirection. The children appeared happy during transitions for visits and Z.R. reported he wanted to continue visiting with mother.

The department acknowledged mother's engagement in the child abuse intervention program but remained concerned about mother's inability to address conflict resolution appropriately. There were multiple reported occasions of mother being verbally aggressive toward service provider staff, the previous social worker, and visitation staff. One service provider refused services to mother due to the verbal abuse. Mother reportedly threw a water bottle at the visitation staff and was suspended from the visitation center for endangering the staff.

On October 27, 2022, the juvenile court terminated mother's reunification services. The court found mother had made minimal progress towards alleviating and mitigating the cause of the children's removal. Mother's visitation was reduced to two times per month. The court ordered a selection and implementation hearing pursuant to section 366.26.

On February 22, 2023, the department issued its section 366.26 report. The department continued to recommend terminating mother's parental rights. Mother was not consistently visiting the children as she attended many visits but also cancelled many visits. Mother was observed to be attentive and affectionate with the children during supervised visits but was inconsistent in following through on redirecting and disciplining them at times. The children did not look to mother for their needs. The children greeted their mother with hugs and were not distressed at the end of visits. Z.R. met medical necessity for mental health treatment due to his symptoms of emotional reactivity, sibling aggression, oppositional behavior, sadness, irritability, and worry, but had improved behaviorally since being placed with maternal aunt. J.W.'s behavioral issues, such as tantrums, aggression, and hoarding food, had also "improved greatly since placement." The children were "thriving" in their placement with maternal aunt. They were observed to be happy and comfortable in maternal aunt's presence and Z.R. wanted to remain as placed. The children were considered "generally adoptable" and the department recommended adoption of the children by maternal aunt.

5.

Mother was not considered to have made significant progress in resolving the problems that led to the children's removal. Specifically, on January 9 and January 12, 2023, mother denied the prior physical abuse of Z.R. that was previously found true by the juvenile court at the disposition hearing. On January 9, 2023, mother reported she was involved in substance abuse outpatient treatment and was testing clean for that program. However, on the same date, mother tested positive due to an abnormal creatinine level, indicating she was flushing her system and subsequently "no-showed" for testing on February 7 and February 8, 2023.

## C. Combined Hearings Pursuant to Sections 388 and 366.26

On May 5, 2023, mother filed her first section 388 petition. Mother requested the section 366.26 hearing be vacated and an additional six months of reunification services be ordered for her. Mother also requested visitation with the children one time per week for one hour with discretion for extended visits with five days' notice. Mother asserted the children were bonded with her and had a new sibling to bond with.[4] She further asserted she had learned proper discipline methods and how to stay calm in stressful situations. Mother reported understanding that hitting children has devastating negative effects on the children. Mother submitted a memorandum of points and authorities and documentation in support of her petition.

On May 9, 2023, the juvenile court initially denied mother's section 388 petition and proceeded with the section 366.26 hearing. After hearing part of mother's testimony, however, the court reconsidered its original denial because mother's testimony revealed new evidence that was undisclosed in her petition or declaration. The court found mother had made a sufficient showing that the requested change may be in the children's best

---

[4]    Mother gave birth to the children's half sibling, S.O., in December 2022.

6.

interests and decided to hold a contested hearing regarding mother's petition combined with the section 366.26 hearing.[5]

The current social worker, who had been assigned to the children's case since November 2022, testified that the visits he supervised between mother and the children "went really well." The social worker confirmed the boys would say they wanted to visit with mother when asked.

Mother testified she missed some visits because the social worker sometimes would not return her calls. Mother reported two unsupervised visits with the children in February and March 2023. Maternal aunt dropped the boys off at mother's house both times and they spent the weekend with mother. Mother and the children took walks, played games, went to the park, watched movies, had pizza, and cooked together.

Mother stopped using marijuana because her medication was changed and worked a lot better. She started testing negative for marijuana in September 2022. Mother missed drug testing on February 7 and February 8, 2023, because she was attending her nephew's funeral. Mother had been working for a year and a half. She confirmed undergoing a mental health assessment and there was no recommendation for mental health services. Mother was in a second parenting class.

Mother was asked about the reported physical abuse of Z.R. On that day, mother started spanking Z.R. on his buttocks and other family members present tried to take Z.R. from mother. This turned into a "big fight" in the living room. Mother acknowledged she punched Z.R. and then kicked him when he fell. During cross-examination, mother testified she did not punch or kick Z.R. intentionally. She understood the family reported something different during that incident, but she said they were not being truthful. Mother denied cursing or throwing a water bottle at the visitation staff.

---

[5] The summarized testimony from the social worker and mother includes testimony from both before and after the juvenile court decided to hold a contested hearing.

7.

On recall, the social worker testified he did not find mother to be an angry person as reported to him by the previous social worker. The social worker said mother was "in the process of changing." He reported mother has "never" discussed her responsibility for abusing Z.R. and was "still adamant" the allegations were untrue. The social worker was afraid mother's inability to accept responsibility posed a risk "of things happening again with the discipline of the children." Mother did not report to the social worker the unsupervised overnight visits. He still recommended mother's parental rights be terminated and the children freed for adoption.

The hearing was continued. Prior to the next hearing date, mother filed an amended section 388 petition on June 26, 2023, requesting a stay of the section 366.26 hearing and family maintenance services, or in the alternative, six months of reunification services.

The department issued an addendum report on June 30, 2023, recommending adoption as the most appropriate permanent plan for the children and mother's parental rights be terminated. Maternal aunt reported that visits between the children and mother were going well. Maternal aunt told the social worker that child protective services (CPS) came out to investigate her house based on mother's allegations that maternal aunt had a gun and drugs in her house. When the social worker spoke to mother about the CPS referral on the phone on April 7, 2023, he told mother the allegations appear to be unfounded. Mother said to the social worker during this call, " 'You lied about me paying attention to my children.' " The social worker responded there were times mother struggled to be attentive to the children. Mother responded, "get a life … you can tell them what the f[***] I said," and hung up. The department's report further stated mother had missed three dental appointments for J.W. in June 2023. Mother's presence was required at these appointments because J.W.'s dental treatment could not be completed without her consent. During a monthly contact with the children on June 14, 2023, both children reported to the social worker that they wanted to live with mother.

The juvenile court held further hearings on July 3, 2023, and July 6, 2023, during which the social worker, maternal aunt, and mother provided testimony.

The social worker investigated the unsupervised visits with mother. Maternal aunt told the social worker she stayed overnight at mother's house with the children. The social worker still recommended adoption as the appropriate plan for the children. He was aware mother completed all her services for her other dependency case regarding S.O.[6] He had spoken with the social worker for that case who notified him that S.O.'s case was being closed due to mother's progress. When asked why the social worker's recommendation for the children was different if S.O.'s case was closed, he said S.O.'s case was different, and the children had been through different circumstances with mother.

Maternal aunt testified there was one overnight visit with mother where she and the children spent the night together at mother's house. Maternal aunt and the children slept on a mattress in the living room while mother slept in the bedroom with S.O. The children told maternal aunt they do not want to stay with mother and want to stay in maternal aunt's house. Maternal aunt admitted she had missed taking the children to visits with mother, but said it was always because either the children were sick, or she could not get off work in time. During a visit, the children gave mother hugs and kisses, and told mother they love her, but did not listen to mother. Maternal aunt did not notice any inappropriate discipline by mother during the visits.

Mother testified she would be able to control her anger if the children were returned to her care. She understood it was "inappropriate and intolerable" for there to be any type of abuse toward the children. Mother no longer smoked marijuana and had not for almost a year and one month. She had clothing and a room in her house for the

---

[6]     S.O. was the subject of a separate dependency case involving mother, the details of which are discussed as relevant to and reflected in the record for the children's case.

9.

children.  Mother denied that maternal aunt had supervised any visits in her house.  She said maternal aunt dropped the children off at her house for those weekends and left them with mother.  Mother submitted photos of her and the children during those visits, some of which were reportedly taken after 1:00 a.m.

## D.  The Juvenile Court's Rulings

With respect to mother's section 388 petition, the juvenile court concluded mother had not met her burden of showing a change in circumstances by a preponderance of the evidence.  As evidence in favor of changed circumstances, the court acknowledged mother had been testing clean and been sober for a year.  The court further recognized mother's dependency case with S.O. was dismissed and S.O. remained in mother's care.  Mother had also completed parenting classes and indicated her seizures were under control.

The juvenile court found, however, that mother testified to knowingly violating a court order by having unsupervised contact with the children.  Mother knowingly withheld that information from the department and did not reveal it until her testimony.  The court further found that in violating that order, mother kept the children awake into the middle of the night.  The court found that mother completed less than half of her child abuse intervention program even viewing the evidence in "the most favorable way possible" to mother.

"[S]ignificantly," the juvenile court found that mother "has spent the entire case saying that nothing happened" regarding the abusive incident with Z.R.  The court stated it was "not until … this point that [mother] begins to take some level of responsibility."  Mother "only just now remembered that [Z.R.] was in the midst of a family brawl."  The court further found that "family brawl is not an accurate descriptor of what [mother] testified to and what was set forth in her declaration.  In fact, what is most significant to the [c]ourt is [Z.R.] was about four … at the time according to the reports, and that four  relatives had tojump in to save him from [mother].  And yet [mother] indicates she

10.

just finally understood that that's whathappened." The court opined this was "clearly not a spontaneous memory."

The juvenile court concluded it would be dangerous for the children to be returned to mother's care. The court concluded the children "are in completely different circumstances than their sister" because there is no evidence mother had physically abused S.O. The court discussed J.W.'s three dental appointments mother missed in June 2023 and noted this "was not a minor appointment for [J.W.]. This was dental surgery." The court went on to conclude there was no showing the children would be safe or cared for by mother notwithstanding her ability to care for S.O.

The juvenile court also denied mother's alternative request for six more months of reunification services. The children had been out of their mother's care for two years and there was "no dispute they are doing better at home and better at school." The court found mother had not demonstrated that providing her with six more months of services would be in the children's best interests. The court concluded it was unclear what did or did not happen at certain visits with mother, but opined maternal aunt was more believable than mother. The court acknowledged that while some circumstances had changed significantly, mother had been purposely evasive with the department, made unfounded allegations against maternal aunt, and withheld information from the department. Mother had not completed her child abuse intervention program and subjected the children to physical abuse.

Turning to the section 366.26 petition, the juvenile court found that while the children were adoptable, mother had maintained regular visitation and the children would benefit from a continued relationship with her. The court therefore found mother had demonstrated a beneficial parent-child relationship as argued by mother's counsel and minors' counsel as well. Minors' counsel requested the court offer an additional six months of reunification services to mother.

The juvenile court concluded it was premature to order further reunification services under section 366.3, subdivision (f) and opined mother could raise the issue at the next hearing. Continued placement of the children was deemed necessary, and their current placement with maternal aunt was considered appropriate. Although maternal aunt was unwilling to provide legal guardianship of the children, the court ordered the children to remain in maternal aunt's house until a suitable family member could provide placement. The court ordered mother to have supervised visits a minimum of twice per month for two hours.

Mother timely appealed the court's denial of her section 388 petition.

## **DISCUSSION**

### I. **Applicable Legal Principles and Standard of Review**

Section 388 permits a parent to petition to change, modify, or set aside any prior order of the juvenile court. (§ 388, subd. (a)(1).) The petitioning parent bears the burden of proving: (1) there are changed circumstances or new evidence, and (2) the proposed change is in the child's best interest. (*Ibid*.; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).) This burden must generally be met by a preponderance of the evidence. (*Stephanie M.*, at p. 317; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; Cal. Rules of Court, rule 5.570(h)(1)(D).)

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) Section 388 provides an " 'escape mechanism' " for a parent to show reformation after reunification services have been terminated but before parental rights have been terminated. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

"The change in circumstances must relate to the purpose of the order and be such

12.

that the modification of the prior order is appropriate. [Citation.] In other words, the problem that initially brought the child within the dependency system must be removed or ameliorated. [Citations.] The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, disapproved on another ground by *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.)

In determining whether modification of the order is in the child's best interest, courts have considered the following nonexhaustive factors: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.)

We review the denial of a section 388 petition for an abuse of discretion. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) "The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685–686.)

## II. Analysis

Mother argues she showed she had sufficiently changed to warrant granting her request for returned custody of the children with family maintenance services. Specifically, mother argues she provided evidence she had been sober for a year, completed her parenting program, brought her seizures under control, had S.O. returned

to her care, and "affirmatively testified to taking responsibility and accountability" for abusing Z.R.

The juvenile court acknowledged the evidence mother had been testing clean and been sober for a year, her dependency case with S.O. was dismissed and that S.O. remained in mother's care, mother had completed parenting classes, and her seizures were under control. But "significantly" for the court was mother's lack of progress in acknowledging and accepting responsibility for physically abusing Z.R. Mother long resisted admitting she had physically abused Z.R. Mother initially claimed a child abuse intervention program was " 'unnecessary because [she] did not abuse [her] children.' " Mother eventually enrolled in the program and completed 16 sessions. After reunification services were terminated, mother continued child abuse intervention classes with another provider but had not completed that program. Mother was still denying she physically abused Z.R. as of January 2023 and did not accept responsibility for the abuse until her first section 388 petition in May 2023. When asked about the abusive incident during the combined hearings, mother said she started spanking Z.R. and multiple relatives started grabbing Z.R. from mother to stop her. Mother confirmed she punched Z.R. and kicked him when he fell but denied doing so intentionally. She said Z.R. was punched and kicked by accident as part of the alleged "family brawl." Mother's belated acceptance of responsibility at best demonstrated a qualified ownership of how Z.R. was abused and the court was rightfully concerned about how late in the proceedings this memory resurfaced. Mother did not acknowledge that even if her version of events was credited, mother's spanking of Z.R. was ostensibly alarming enough that several others present felt compelled to intervene. "One cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.)

Mother's assertion there was no evidence she continued to struggle with how to deal with her frustration or anger is belied by the record. During her call with the social worker in April 2023, mother accused the social worker of lying about her paying

14.

attention to the children. She later during this call said, "get a life … you can tell them what the f[***] I said," and hung up. Recognizing emotions can run high in dependency cases, this behavior does not evince mother's claimed ability to control her anger.

Mother predominantly argues the department's return of S.O. to her care and dismissal of that dependency case show there was a substantial change in circumstances. Mother contends it is "illogical" to conclude an infant is safe with her, but her older children would not be. The court concluded the children were "in completely different circumstances than their sister" because there was no evidence mother had physically abused S.O. In contrast, there was "significant evidence that [mother] was, for a very long period of time, physically abusive of the [children]." The children have a different history with mother than S.O. S.O.'s return to mother's custody was relevant and considered by the court, but mother cites no authority for the implied assertion that the return of one child in a separate case is dispositive in determining whether she showed changed circumstances regarding the reasons the children were removed from her custody.

Mother argues this case is similar to *In re J.M.* (2020) 50 Cal.App.5th 833. In *J.M.*, although the mother had resolved the domestic violence underlying the initial dependency petition, the juvenile court denied her section 388 petition primarily due to concerns about whether the mother was capable of caring for a child with special needs while working full time at night. (*Id*. at pp. 844–845.) The court of appeal concluded the juvenile court abused its discretion because the mother "presented ample evidence that she had addressed the sole basis for juvenile court jurisdiction—domestic violence—as well as every other concern cited by the court in its order terminating reunification services." (*Id*. at p. 846.) *J.M.* is factually distinguishable because, as mother concedes, that case involved domestic violence against the parent, not physical abuse of the child, as occurred here. Additionally, there is no indication the court here improperly considered circumstances unrelated to the basis for the court's jurisdiction as the court

15.

did in *J.M.* The court properly considered whether mother showed changed circumstances regarding the reasons the children were detained—specifically, mother's physical abuse, substance abuse, and uncontrolled medical condition.

While mother's efforts to address the issues that led to the children's removal are commendable, the evidence supports changing rather than changed circumstances. The evidence does not show mother had sufficiently ameliorated the risk of physical abuse to the children. On this record, the court reasonably concluded mother did not show a sufficient change in circumstances warranting modification of the prior order.

Even if mother had shown sufficiently changed circumstances, the court reasonably denied mother's request because she did not show returning the children to her custody was in their best interests. While mother acknowledges the factors in determining what is in a child's best interest vary according to each child's needs and circumstances, she continues to argue it was illogical for the court to conclude the children's circumstances were not comparable to S.O.'s circumstances. (*In re Heather P.* (1989) 209 Cal.App.3d 886, 892 ["the specific factors a court must consider vary with each case" in determining the best interest of a child].) The fact that S.O. was placed with mother does not compel a finding return of the children was in their best interests. (See e.g., *In re Jacob P.* (2007) 157 Cal.App.4th 819 [the trial court did not abuse its discretion in finding it was not in one twin's best interest to return to the mother although the other twin was placed with her].) The court aptly concluded the children were in completely different circumstances to S.O. because there was no evidence mother had abused S.O., but there was significant evidence mother was physically abusive to the children for a long period of time.

The record raises serious doubts as to whether mother could provide for the needs of the children in addition to her infant daughter. Mother missed three dental appointments for J.W. in June 2023, one of which she missed because she overslept due to a "tough night" with S.O. Before the children were removed from mother, mother

16.

reportedly would yell and hit the children when she became too overwhelmed by them. Mother's ongoing struggle controlling her anger and history of resorting to physical abuse when overwhelmed by the children posed an unacceptable risk of further physical abuse if she was charged with caring for three children. The juvenile court reasonably concluded that risk of physical abuse to the children if returned to mother's custody would not be in their best interests.

While mother was affectionate and engaged with the children during visits, mother never progressed beyond supervised visits, and the unsupervised (and unauthorized) visits in February and March 2023 were hardly indicative of responsible parenting. Despite the children's behavioral issues, mother kept them both up until late into the night during these unauthorized visits. The children had been out of mother's care for two years and there is "no dispute" they were doing better at home and at school in their placement with maternal aunt.

Mother critiques maternal aunt and argues it is in the best interests of the children to return to her custody rather than "languishing in foster care." Mother ignores the shift in focus after reunification services have been terminated is on permanency and stability for the children, and the rebuttable presumption that continued foster care is in the best interest of the child. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The juvenile court's order to continue the children in foster care was made pursuant to section 366.26, after the court had already determined returning the children to mother was not in their best interests. A "section 366.26 hearing is decidedly not a contest of who would be the better custodial caregiver." (*In re Caden C.*, *supra*, 11 Cal.5th at p. 634.) Mother's critiques of maternal aunt are therefore misplaced. To the extent mother argues the court's finding the parental-benefit exception applied is inconsistent with denying her section 388 petition, the parental-benefit exception "applies in situations *where a child cannot be in a parent's custody* but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child."

17.

(*Id*. at p. 630, italics added; § 366.26, subd. (c)(1)(B)(i).) Implicit in selection of a permanent plan under section 366.26 is that reunification of the family is not possible because reunification services have been terminated and the problems that led to the court's jurisdiction are assumed unresolved. (*Caden C*., at p. 637 ["when the court holds a section 366.26 hearing, it all but presupposes that the parent has not been successful in maintaining the reunification plan meant to address the problems leading to dependency"].) Thus, the question in determining whether to terminate parental rights and select a permanent plan for the child "is decidedly not whether the parent may resume custody of the child." (*Id*. at p. 630.) Here, at the point when the court found the parental-benefit exception applied to mother, there was no question of returning the children to her regardless of the parental-benefit exception's application. (*Id*. at p. 634 ["Nothing that happens at the section 366.26 hearing allows the child to return to live with the parent."].) There is no inconsistency in the court's findings that modifying the court's prior order was not in the children's best interests but terminating mother's parental rights would be detrimental to the children. (*Id*. at p. 643 [the parental-benefit "exception preserves the child's right to the relationship even when the child cannot safely live with that parent"].)

Mother makes additional contentions regarding the juvenile court's order for visitation two times per month for two hours after the court initially stated it would order visitation a minimum of once per week. Because the court denied mother's request to modify the prior order, the court was entitled to maintain mother's visitation in a manner consistent with that order. Considering mother's violation of court orders regarding unsupervised visits and conduct during supervised visits, the court did not abuse its discretion in denying her request for increased visitation with the children. (See *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008–1010 [restrictions on parental visitation are proper if they are consistent with the child's best interest].)

## <u>DISPOSITION</u>

The order is affirmed.